UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATHLEEN MOONEY and NICKOLLE ADAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS, INC.,<br><br>Defendant. | Civil Action No. 1:22-CV-12037-AK |

**MEMORANDUM AND ORDER ON PLAINTIFFS MOTION FOR RECONSIDERATION**

**ANGEL, KELLEY, D.J.**

Plaintiffs Kathleen Mooney ("Mooney") and Nickolle Adam ("Adam"), on behalf of themselves and those similarly situated, move this Court to reconsider its prior decision to grant Defendant's Motion to Dismiss and to request leave to amend the complaint once more.

**I.      BACKGROUND**

Familiarity with the record, procedural history, and arguments presented as well as this Court's previous opinion [see Dkt. 74] is assumed. Thus, the Court only details the facts that are relevant to the instant motion.

**A.      Employment Relationship**

Mooney and Adam alongside the putative class members (together, "Plaintiffs"), are similarly situated healthcare workers who were employed at dialysis centers affiliated with Fresenius Medical Care Holdings, Inc. ("Fresenius Holdings") across the country. [Dkt. 28 ¶ 43]. Mooney worked at Bio-Medical Applications of North Carolina, Inc. and Bio-Medical

1

Applications of South Carolina, Inc. [Id. ¶ 45]. In the First Amended Complaint ("FAC"), Adam did not identify who her direct employers were in Idaho or Oregon because she did not know at the time. [Id. ¶ 48]. While the FAC listed potential employers [Id. ¶¶ 48, 51], Adam maintains she had no reason to believe she worked for "anyone other than the same Fresenius company in both states." [Id. ¶ 13]. Fresenius Holdings subsequently identified Adam's local employers as "Renal Care Group Inc." and "FMC Dialysis Servs Oregon LLC."[1] [Dkt 36-1 at 2].

To demonstrate Fresenius Holdings was their joint employer, Plaintiffs allege they:

- Applied for their positions on a "Fresenius" website;
- Received a call from and were interviewed and hired by a "Fresenius" employee;
- Trained at a "Fresenius" location;
- Had access to a "Fresenius" intranet containing "Fresenius" policies and procedures, including the policy for tardiness and paid time off;
- Received monthly required training materials via email from "Fresenius" at their "Fresenius" work email; and
- Received assistance from their managers at each "Fresenius location" to transfer between states and were not required to re-apply for employment when transferring.

[Dkt. 28 ¶¶ 12-13]. Plaintiffs further allege that, to varying degrees, Fresenius Holdings determined their work conditions by:

- crafting policies and procedures that staff were required to follow;
- determining education and licensing requirements;
- having the authority to reassign Plaintiffs to dialysis centers in different states;
- determining the start and end date of employees' work;
- determining that Plaintiffs would be paid hourly and would receive their paychecks on a bi-weekly basis; and
- maintaining employment records of Plaintiffs on their systems and servers, which were managed by Fresenius Holdings employees.

---

[1] Fresenius Holdings attached the declaration of Bryan Mello, Vice President of Corporate Tax at National Medical Care, Inc., to its Motion to Dismiss. [Dkt. 36-1]. Mello's declaration identified who Adam's direct employers were. [Dkt. 36-1 at 12]. However, this Court declined to take judicial notice, and struck that declaration from the record. [Dkt. 74 at 10-11]. Nonetheless, Plaintiffs do not dispute the veracity of the allegations in the Mello declaration and now rely on it to argue they now know who Adam's direct employers are. [Dkt. 78 at 3, 7].

[Id. ¶¶ 67-71, 73-75, 77-79].  In its Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion to Dismiss"), Fresenius Holdings argued it could not be Plaintiffs' direct employer because it has no employees and Plaintiffs merely put forth conclusory allegations insufficient to establish joint employer liability.  [Dkt. 36 at 3, 6-7].

### A. Procedural History and the Laughlin Decision

In recent years, plaintiffs across the country have sued Fresenius Holdings and its local entities for wage and hour violations under the Fair Labor Standards Act ("FLSA") and related state statutes.  See e.g., Azurin v. Bio-Med. Applications of California, Inc., No. 23-CV-11585 (D. Mass. July 14, 2023) (Kelley, J.); Laughlin v. Fresenius Med. Care Holdings, Inc., No. 23-CV-00180 (E.D. Wash. June 22, 2023); Ruggeri Sarigu v. Bio-Med. Applications of Illinois, Inc., No. 23-CV-04508 (N.D. Ill. July 12, 2023); Schuman v. FMS New York Serv., LLC, No. 23-CV-05731 (E.D.N.Y. July 28, 2023); see also Osei-Tutu v. Fresenius Med. Care Holdings, Inc., No. 7:22-CV-04992 (S.D.N.Y. Jan. 30, 2023); Reyes v. Fresenius Med. Care Holdings, Inc., No. 20-CV-706 (M.D. Fla. July 7, 2021).

One of these cases, Laughlin v. Fresenius Medical Care Holdings, Inc., No. 23-CV-0180 (E.D. Wash. June 22, 2023), involves factual allegations remarkably similar to the ones before this Court.  The named plaintiff, Laughlin, is a registered nurse who alleges Renal Care Group, Inc. ("RCG"), her direct employer, and Fresenius Holdings are both jointly liable for violating the Washington Minimum Wage Act.  Laughlin v. Fresenius Med. Care Holdings, Inc., No. 23-CV-00180, 2023 WL 7093801, at *1 (E.D. Wash. Oct. 26, 2023) ("Laughlin I").  According to her, the two defendants automatically deducted meal breaks from her time worked and failed to pay her for this time.  Id.  In October 2023, the Laughlin court held that the plaintiff pled with insufficient specificity that Fresenius Holdings was a joint employer because she "offer[ed]

3

nothing but conclusory statements that Fresenius retains the ability to hire or fire employees, supervised and controlled her work, made decisions about the rate of payment, or maintained records applicable to her employment." Id. at *5.  By failing to assert sufficient factual allegations to support the factors of the Ninth Circuit's "economic realities" test, the court dismissed the claims against Fresenius Holdings, making RCG the only remaining defendant. Id. at *5-6.  Laughlin, who had not previously filed an amended complaint, was granted leave to amend to "factually clarify her claim that Fresenius is a joint employer." Id. at *6.  The plaintiffs then filed an amended complaint against Fresenius Holdings and RCG, and Fresenius Holdings subsequently filed a motion to dismiss the amended complaint.

On January 25, 2024, this Court granted Fresenius Holdings' Motion to Dismiss the Amended Complaint.  [Dkt. 74].  This Court held that Adam had not identified her direct employer, making her unable to represent similarly situated class members.  [Id. at 6].  Given the remarkable similarity between the facts alleged in Laughlin and the ones here, this Court found the reasoning in Laughlin I to be persuasive and held that Mooney did not allege sufficient facts to establish Fresenius Holdings was her joint employer.  [Id. ¶ 9].  Because Fresenius Holdings is the only defendant here, the case was dismissed in its entirety and promptly closed.  [Dkt 75].

Five days later, the court in Laughlin *denied* Fresenius Holdings' motion to dismiss the plaintiffs' first amended complaint.  Laughlin v. Fresenius Med. Care Holdings, Inc., No. 2:23-CV-00180, 2024 WL 347155, at *1 (E.D. Wash. Jan. 30, 2024) ("Laughlin II").  Since Laughlin I, the plaintiffs had added three significant factual allegations to their amended complaint: 1) "Laughlin's offer letter was on Fresenius letterhead;" 2) "Fresenius instructed Laughlin and the Putative Class Members to identify themselves as Fresenius employees;" and 3) "RCG pays [the putative class members], but Fresenius does everything else." Id. at *3-4.  As a backdrop to this

4

last claim was the plaintiffs' contention that Fresenius Holdings determined how the meal break and deduction as well as the different pay rates applied to plaintiffs. Id. at *1, *7. In Laughlin II, the court re-assessed whether Fresenius Holdings was Laughlin's joint employer and held that she plausibly alleged that Fresenius Holding "controlled the nature" of class members' work; it had "the power to determine the pay rates or methods" of class members; its "premises and equipment are used for the work;" and the "service rendered [is] an integral part of [Fresenius Holdings'] business." Id. at *6-8. Taken together, the court concluded that "[p]laintiff has set forth enough facts to draw an inference that the 'economic reality' of the RCG and Fresenius business relationship could be categorized as joint employers." Id. at *8.

Plaintiffs' Motion for Reconsideration in this case was filed a month later. [Dkt. 78].

## II.   LEGAL STANDARD

Under Fed. R. Civ. P 59(e), a motion for reconsideration is "not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). Instead, this motion is "an extraordinary remedy which should be used sparingly." Id. Accordingly, a "district court has substantial discretion and broad authority to grant or deny" a motion for reconsideration. Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 81 (1st Cir. 2008). Motions for reconsideration are proper in a very limited set of circumstances, such as "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, and an intervening change in controlling law." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citation omitted). Plaintiffs argue that this Court's decision to dismiss Adam and the putative class members' claims was "manifest error [of law] and clearly unjust." [Dkt. 78 at 1]. A finding of manifest

5

injustice "requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong." Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002).

## III.  DISCUSSION

Plaintiffs assert that reconsideration is appropriate for three reasons. First, this Court erred in its dismissal of Adam on the grounds that she did not identify her direct employer in the FAC. [Dkt. 78 at 2]. Second, Mooney's claim should have survived the Defendant's Motion to Dismiss because the amended complaint before the court in Laughlin II was similar to Mooney's Amended Complaint and Laughlin's survived a motion to dismiss. [Id. at 4-6]. Lastly, Plaintiffs argue that it was improper for this Court to dismiss the putative collective action members for not having identified their direct employer. [Id. at 3-4]. In the alternative, Plaintiffs request one more opportunity to amend their complaint, arguing that the Court never expressly decided on their earlier request [Dkt. 46 at 13-14] to do so. [Dkt. 78 at 7].

### A.  Adam's Claim

#### 1.  Cavallaro

Plaintiffs first contend that the holding of Cavallaro v. UMass Memorial Healthcare, Inc. "didn't impose an absolute requirement that an employee must identify their direct employer." [Dkt. 78 at 2]. Since they amended their complaint to add the names of Mooney's direct employers, Plaintiffs argue that the FAC "obviously mooted any request to dismiss [Adam] on this basis." [Id.].

In Cavallaro v. UMass Memorial Healthcare, Inc., the First Circuit found that identifying a direct employer is a prerequisite to establishing joint employer liability under the FLSA. 678 F.3d 1, 10 (1st Cir. 2012). The First Circuit affirmed the district court's dismissal of the FLSA claims and stated, "[E]ven on these [joint employer or integrated enterprise] theories some direct

employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible." Id. On remand, the district court held that the complaint only set forth facts sufficient to implicate the named plaintiff's direct employer and "possibly" its parent company, UMMHC. Cavallaro v. UMass Mem'l Health Care, Inc., 971 F. Supp. 2d 139, 150 (D. Mass. 2013). Nevertheless, the court concluded Cavallaro lacked standing to assert claims under the FLSA as to the parent company because satisfying one Baystate factor was not sufficient to demonstrate UMMHC "exercised sufficient control over her employment conditions to be considered a[ joint] employer under the FLSA." Id.

The standard set forth in Cavallaro is controlling. There is clear precedent in the First Circuit concerning FLSA collective actions specifically in healthcare settings. In addition to Cavallaro, the First Circuit and district courts in this circuit heard a series of cases known as the "hospital compensation cases," in which plaintiffs pursued FLSA collective action claims against a variety of hospitals and hospital networks. See Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 379 (D. Mass. 2016), aff'd, 879 F.3d 407 (1st Cir. 2018); Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34 (1st Cir. 2013); Pruell v. Caritas Christi, 678 F.3d 10 (1st Cir. 2012). Taken together, these cases "provide an unusually clear map of the relevant terrain. They lay out precisely what information must be alleged to state these wage-and-hour claims in the hospital context plausibly." Hamilton, 209 F. Supp. 3d at 387.

The Cavallaro standard has been cited in subsequent hospital compensation cases where joint employer liability was at issue. See id. at 388 (holding that plaintiffs' complaint was insufficient because, like Cavallaro, their complaint "does not identify what defendant actually employed the plaintiffs."); Pruell, 678 F.3d at 14-15 (pointing out that plaintiffs filed a belated affidavit identifying the hospital where they worked—i.e., their direct employer—in response to

pleading deficiencies that the district court identified, probably as a result of the opinion in Cavallaro v. UMass Mem'l Health Care Inc., No. 09-CV-40152, 2011 WL 2295023 (D. Mass. June 8, 2011)); see also Bah v. Enter. Rent-A-Car Co. of Bos., LLC, No. CV 17-12542-MLW, 2020 WL 6701324 at *2 (D. Mass. Nov. 13, 2020) (explaining that "plaintiff had failed plausibly to allege facts supporting the conclusion that he had an employment relationship with [Enterprise Holdings]," and dismissing the claims against Enterprise Holdings without prejudice). A review of these cases would have alerted Plaintiffs to this standard.

Plaintiffs also maintain that "[a]n allegation that a plaintiff doesn't know which subsidiary of a holding company was the direct employer will suffice" because some information is unknown to plaintiffs in the early stages of litigation. [Dkt. 78 at 2]. Plaintiffs rely on a quote from Cordero-Hernández v. Hernández-Ballesteros, a case cited in passing in Cavallaro, to suggest that their lack of knowledge as to the identity of Adam's direct employer justifies why this information was absent from their complaints. 449 F.3d 240 (1st Cir. 2006). "'[I]t will often be difficult for a plaintiff to plead with specificity when the facts that would support her claim are solely in the possession of a defendant.'" [Dkt. 78 at 2 (quoting Cordero-Hernández, 449 F.3d at 244)]. The quoted language is taken out of context.

The court in Cordero-Hernández was explaining that limited discovery might be warranted in a RICO case where a plaintiff would "have difficulty proving . . . whether . . . a particular communication passed over the interstate wires." Cordero-Hernández, 449 F.3d at 244. Adam might not have been able to identify her employer initially but, unlike in a RICO case, the information here is not particularly difficult to find. Mooney was able to locate the name of her direct employers through a review of her W-2s. [Dkt. 28 ¶ 45]. As the Defendant notes, Adam could have or "should have known [who her employer was] based on a review of

8

her paystubs or IRS Form W-2s prior to filing the FAC." [Dkt. 79 at 3]. Even if Adam could not locate her W-2s, Adam could have requested a copy of them from the Internal Revenue Service or the Social Security Administration. It is important that plaintiffs "exercise due diligence in amending their complaints. As a corollary of that principle, busy trial courts, in the responsible exercise of their case management functions, may refuse to allow plaintiffs an endless number of trips to the well." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 58 (1st Cir. 2006).

The case law is clear. Since Adam did not identify her direct employer, a critical first step for an FLSA cause of action, Adam cannot establish a joint employment relationship with Fresenius Holdings.

### B. Mooney's Claim

Plaintiffs also argue that the Laughlin II[2] decision provides an additional reason to grant their Motion for Reconsideration. Specifically, Plaintiffs argue that the complaint in Laughlin I was distinguishable from the instant FAC [Dkt. 78 at 4], such that "allegations in Plaintiffs' amended complaint provide as much 'plausibility' as the amended complaint in Laughlin." [Id. at 5]. This Court disagrees.

Previously, this Court was persuaded by the reasoning in Laughlin I because Laughlin's original complaint did not sufficiently connect the business relationship between Fresenius Holdings and RCG to establish Fresenius Holdings was Laughlin's joint employer. [Dkt. 74 at 9]. In Laughlin II, the additional factual allegations plaintiffs raised were material to demonstrating that Laughlin was an employee of *both* Fresenius Holdings and RCG under Washington state law. The same cannot be said here.

---

[2] A new decision in Laughlin is not an intervening change of law for purposes of this Motion for Reconsideration. See Camreta v. Greene, 563 U.S. 692, 709, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation omitted).

Although similar, the standards for determining whether a company constitutes a joint employer under the Becerra economic reality test for Washington state law wage claims and the Baystate test in the First Circuit for FLSA claims are distinct. The Becerra test contains five regulatory factors:

> (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (5) preparation of payroll and the payment of wages.

Laughlin, No. 2:23-CV-00180-TOR, 2024 WL 347155, at *5-6 (E.D. Wash. Jan. 30, 2024); see also Becerra v. Expert Janitorial, LLC, 181 Wash. 2d 186, 196-97 (2014). These factors are similar to the four factors the First Circuit outlined in Baystate to establish a joint employer relationship: "(1) . . . the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). However, the Washington state "economic reality test also contains eight common law factors," which courts must apply when evaluating whether an entity constitutes a joint employer. Laughlin, WL 347155, at *6; see also Becerra, 181 Wash. 2d at 196-97. There are no equivalent additional factors like those in the First Circuit for FLSA claims.

In addition to different legal standards, there are additional facts in Laughlin's amended complaint that are not alleged here. These facts supported the court's conclusion in Laughlin II that "[t]wo of the regulatory factors weigh in favor of finding joint employment, one neutrally, and one against." Laughlin, 2024 WL 347155, at *8. Specifically, the Laughlin court distinctly notes that the allegation that "[p]laintiff allege[d] that class members were instructed to identify themselves as Fresenius employees" helped demonstrate the nature and control of punitive class

10

members by Fresenius Holdings. Id. at *6. Based on the newly added allegations, the court inferred from plaintiff's complaint "that Fresenius is essentially 'pulling the strings,' and RCG simply executes that payment policies that Fresenius directs." Id. at *7. This inference was "the most persuasive evidence" to support plaintiff's claim that Fresenius Holdings had the power to determine the rates of pay of putative class members. Id. The Laughlin court was also persuaded that plaintiff's case plausibly alleged two common law factors: 1) "the premises and equipment of the employer are used for the work," and 2) "the service rendered is an integral part of the alleged employer's business." Id. at *8. The court concluded that "[w]ith the added support of the common law factors, the Court finds that Plaintiff has overcome Defendant's motion to dismiss." Id. Even so, that court's conclusion that Laughlin satisfied only two of four regulatory factors and two of eight common law factors is hardly validation of Plaintiffs' argument that they have made sufficient allegations here to set forth a plausible claim that Fresenius Holdings is a joint employer.

In sum, the court in Laughlin II was presented with a different case than the one before this Court. Factually, the amended complaint being reviewed in Laughlin II contained additional allegations that spoke directly to the nature of the business relationship between RCG and Fresenius Holdings. This Court was not presented with those facts here, and the facts contained in the FAC did not enable this Court to make similar inferences.[3] The added support of the

---

[3] In their Motion for Reconsideration, Plaintiffs direct this Court's attention to Bah v. Enterprise Rent-A-Car Co. of Boston, LLC, No. CV 17-12542-MLW, 2020 WL 6701324 (D. Mass. Nov. 13, 2020), to further bolster their argument that their case should have survived a motion to dismiss. [Dkt. 78 at 3]. Yet in Bah, the court also refused to make inferences about a joint employment relationship without more particularity. Initially, Bah "referred to EHI and ERAC-Boston collectively as 'Enterprise' throughout most of the complaint." Id. at *2. The court deemed this insufficient, so Bah amended his complaint. Id. The court, however, denied the motion to dismiss after receiving a more particularized complaint and conducting a thorough review of two documents defendants filed in support of their motion to dismiss. Id. at *14. It was the facts raised in the documents that ultimately helped Bah plausibly allege EHI was his joint employer. Id. at *8-10. There are no analogous documents or facts here.

common law factors in Laughlin II further solidified the plausibility of plaintiffs' claim, but that standard is not binding upon this Court.

Plaintiffs' current complaint lacks enough detail for this Court to draw the connection between Mooney, Fresenius Holdings, and the daily operations of the two dialysis centers, Bio-Medical Applications of North Carolina, Inc. and Bio-Medical Applications of South Carolina, Inc. Ultimately, the outcome in Laughlin II does not warrant the reversal of this Court's prior decision.

### C. Putative Class Members

Finally, Plaintiffs assert that this Court's dismissal of members of the collective action on the grounds that potential class members had not identified a direct employer was a manifest injustice because putative collective action members have yet to be identified. [Dkt. 78 at 3]. Plaintiffs state that "[s]uch a standard would stop every class or collective action like this one dead in its tracks before it even begins." [Id.] Plaintiffs conclude by stating that "there is no authority for the dismissing putative class members on the basis that they 'failed' to identify which Fresenius subsidiary was their direct employer" and that, at worst, they should be permitted one more opportunity to amend. [Id. at 4].

"The existence of [an] FLSA cause of action . . . is dependent on a threshold finding that Plaintiffs are employees of Defendants under the FLSA. . . . [I]f Plaintiffs have failed to allege a plausible FLSA employment relationship, there is no case or controversy and Plaintiffs do not have standing." Hamilton, 209 F. Supp. 3d at 389; see also Bah, 2020 WL 6701324, at *6. "[T]he questions whether there is standing and whether Plaintiffs have alleged an employment relationship under FLSA are here essentially the same." Hamilton, 209 F. Supp. 3d at 389.

The Court did not rule on the sufficiency of the claims of unnamed putative collective action; it ruled on the sufficiency of Mooney and Adam's claims as the named plaintiffs. This Court never stated that the putative collection action members must have identified their direct employer before bringing this suit. This Court did point out, however, that the insufficiency of the named plaintiffs' claims meant that this case could not be pursued in its current form. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see also Pruell, 678 F.3d at 14 ("Class actions are useful to remedy widespread wrongs, but such lawsuits still require at the outset a viable named plaintiff with a plausible claim."). Accordingly, if Adam and Mooney did not establish viable claims because they have not demonstrated an employer-employee relationship with Fresenius Holdings, then they cannot serve as the named plaintiffs on behalf of individuals who are similarly situated.

In its earlier decision, this Court carefully considered Plaintiffs' alleged facts, the parties' arguments, and the relevant law. In reconsidering these materials alongside the parties' papers, this Court concludes that its decision was not "unreasonable or obviously wrong." Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002).

### D.     Leave to Amend

Plaintiffs maintain that they alleged sufficient facts in the first instance but, should this Court disagree, they request one more opportunity to amend. [Dkt. 78 at 7]. Rule 15 of the Federal Rules of Civil Procedure addresses amendments to pleadings. Generally, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, a court may deny leave to amend because of "undue delay, bad faith or dilatory motive on the part

13

of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).  In determining whether to grant a motion to amend, courts must examine the totality of the circumstances and exercise their "informed discretion in constructing a balance of pertinent considerations." Palmer v. Champion Mortg., 465 F.3d 24, 30-31 (1st Cir. 2006) (citing Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989)).

A favorable decision in Laughlin II does not warrant granting Plaintiffs leave to amend in this case.  Any decision made by the Laughlin court is not binding on this Court [4] and, as aforementioned, neither the facts alleged nor the legal standards in the two cases are exactly the same.  However, Plaintiffs' new counsel assured the Court at the motion hearing that they can add factual allegations sufficient to support the claim that Fresenius Holdings was Mooney and Adam's joint employer.  Because dismissing the FAC was a close call and the test for joint employer liability is particularly fact dependent—even at the motion to dismiss stage — this Court finds that one more amendment would not be futile and will grant Plaintiffs leave to amend their complaint.

This Court will not evaluate whether Plaintiffs' claims would be sufficiently plead if their second amended complaint merely added the name of Adam's direct employer and some version of the three additional facts from Laughlin II.  As Chief Judge Saylor aptly put it, "The Court does not sit as a sort of 'super-lawyer,' here to correct counsel's errors and omissions, or to provide a roadmap as to how to draft a proper complaint." Rowayton Venture Grp. LLC v. McCarthy, No. CV 19-12240-FDS, 2020 WL 6136377, at *3 (D. Mass. Oct. 19, 2020).

---

[4] See supra note 3.

Moreover, a favorable decision in <u>Laughlin</u> is not what should have put Plaintiffs on notice of the pleading deficiencies in their amended complaint.

Rather, Plaintiffs should have been put on notice long ago by the wealth of First Circuit precedent discussing the pleading hurdles in making FLSA claims—particularly in the healthcare context. The First Circuit noted over a decade ago that many courts have been frustrated by the lack of detail in hospital compensation cases being brought throughout the country. "While these cases may involve complaints that differ in some respects from the pleading at issue in this case, the dismissal of many of these similar allegations . . . should have put plaintiffs' counsel on notice of the necessity of a thorough drafting job." <u>Manning v. Bos. Med. Ctr. Corp.</u>, 725 F.3d 34, 61 (1st Cir. 2013); <u>see also</u> <u>Hamilton v. Partners Healthcare Sys., Inc.</u>, 879 F.3d 407, 414 (1st Cir. 2018) (holding that plaintiffs had been put on notice of their pleading deficiencies because "at least nine district courts" had found "defects" in similar pleadings brought by plaintiffs' counsel); <u>Cavallaro</u>, 678 F.3d at 10 ("A number of courts have made clear that they will not put up with game-playing omissions of plainly relevant detail, and we are increasingly sympathetic to this view"). Consequently, absent truly extraordinary circumstances, this Court will not allow a third amended complaint.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Dkt. 77] is **DENIED**, and Plaintiffs' request for leave to amend is **GRANTED**.

**SO ORDERED**.

Dated: August 22, 2024                                                        /s/ Angel Kelley

                                                                                                                 Hon. Angel Kelley
                                                                                                                  United States District Judge